UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Jane Doe, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-12337-IT |
| | * | |
| Town of Stoughton, Juliette Miller, and | * | |
| Marguerite Rizzi, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

April 25, 2018

TALWANI, D.J.

A teacher employed by the Town of Stoughton ("the Town") allegedly sexually assaulted Jane Doe for several years while she was a high school student. Doe brings federal and state law claims against the Town and two school administrators for violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; 42 U.S.C. § 1983; and various state laws. Defendants' Partial Motion to Dismiss the First Amended Complaint [#21], presently before the court, seeks dismissal of all but one claim. The motion is ALLOWED in part and DENIED in part.

I. Background as Alleged in the First Amended Complaint

The plaintiff, Jane Doe, attended Stoughton High School at the time of the events in question. First Am. Compl. ("Compl.") ¶¶ 11, 14, 17-18 [#18]. Defendant Juliette Miller was, at the relevant times, the principal of Stoughton High School. Id. ¶ 3. Defendant Marguerite Rizzi was, at the relevant times, the Superintendent of Stoughton Public Schools. Id. ¶ 4.

Doe became involved in the Destination Imagination extracurricular program at Stoughton High School during the 2013-14 school year, when she was a sophomore. Id. ¶ 11.

The program was run by Timothy Norton, a teacher at Stoughton High School. Id. ¶¶ 5, 11. Starting in the beginning of the 2014-15 school year, Norton allowed Doe to keep her personal and school belongings in his classroom and to rest in the backroom of his classroom, engaged in intimate one-on-one conversations with Doe, texted Doe individually on a regular and late night basis on non-educational matters, and spent time with Doe one-on-one during and after school hours. Id. ¶¶ 17-18. The complaint alleges that Doe and Norton's relationship became physical in November 2014, and Doe and Norton "initially engaged in sexual intercourse in February 2015 and thereafter." Id. ¶ 20. Doe was observed on multiple occasions alone late at night in Norton's classroom and/or the classroom's more private back room. Id. ¶ 16.

In the fall of 2015, another student informed his teacher that he had observed Norton providing Doe with special treatment. Id. ¶ 21. The student and teacher reported to Miller that they had observed Doe parking her vehicle at the nearby school and subsequently getting into Norton's vehicle. Id. Miller launched an investigation into the relationship between Doe and Norton after receiving this report. Id. The complaint alleges, however, that "[t]he 'investigation' was perfunctory and conducted in a hostile and coercive environment in a manner which obstructed the revelation of the truth and was accusatory of the 'victim.'" Id. ¶ 22. "Neither Ms. Doe nor Norton was disciplined as a result of this 'investigation' and Norton's abuse of Ms. Doe continued through her senior year and beyond . . . ." Id. ¶ 31.

In September 2017, Doe and Norton ended their relationship and Doe disclosed their relationship to another teacher. Id. ¶ 38. That teacher reported that information "to the principal for Stoughton and other administrative personnel." Id. ¶ 39. At that point, Stoughton served Norton with an "intention to dismiss" notice and the matter was reported to the Stoughton Police Department. Id. ¶ 40.

This action followed.

## II. Standard

In resolving a Rule 12(b)(6) motion to dismiss, the court must "examine whether the operative complaint states a claim for which relief can be granted, construing the well-pleaded facts in the light most favorable to the plaintiff, accepting their truth and drawing all reasonable inferences in plaintiff's favor." Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The court first "distinguish[es] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)," and then "determine[s] whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (citation omitted).

## III. Discussion

### A. Uncontested Claims

As to a number of the issues raised by Defendants, there is now no disagreement between the parties.

First, Defendants challenge Plaintiff's allegation that some or all Defendants are liable for violating various Massachusetts statutes, including the mandatory reporter statute, M.G.L. ch. 119, § 51A, the anti-bullying statute, M.G.L. ch. 71, § 37O, and the statute requiring schools to notify personnel of mandatory reporting obligations, M.G.L. ch. 71, § 37L. Defendants contend that these Massachusetts statutes do not provide for a private right of action. See Def.s' Mem in Support of Mot. to Dismiss ("Def. Mem.") 9-11 [#22]. At the hearing on the motion to dismiss, Plaintiff's counsel clarified that the complaint does not seek to assert stand-alone claims based on these statutes, and that the allegations that the Defendants violated some or all of these statutes are included only insofar as these alleged violations are relevant to other claims.

3

Accordingly, Defendants' motion to dismiss claims under M.G.L. ch. 119, § 51A, and M.G.L. ch. 71, §§ 37L and 37O is DENIED as moot as no such claims are asserted.

Next, Defendants seek to dismiss Plaintiff's claims against Rizzi and the Town under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. ch. 12 §§ 11H-11I. Def. Mem. 16-18 [#22]. Plaintiff agrees that the complaint does not state a MCRA claim against Rizzi. Opp'n 9 [#27]. And, Plaintiff does not oppose Defendants' argument that the MCRA claim against the Town fails because the MCRA applies only to persons. Defendants' motion to dismiss is therefore ALLOWED as unopposed as to the MCRA claims against Rizzi and the Town.

Third, Defendants challenge the claims that Miller and Rizzi violated the Massachusetts Fair Educational Practices statute, M.G.L. ch. 151C, and that Miller violated Title IX, on the ground that neither chapter 151C nor Title IX provides for a cause of action against individuals. See Def. Mem. 11-12 [#22]. Plaintiff does not disagree. Opp'n 7 [#27]. Accordingly, Defendants' motion to dismiss is ALLOWED as unopposed as to Plaintiff's chapter 151C claims against Miller and Rizzi and as to the Title IX claim against Miller.

Finally, Defendants challenged Plaintiff's chapter 151C claim against the Town on the grounds that Plaintiff failed to file a charge of discrimination with the Massachusetts Commission Against Discrimination before filing this action. The statutory framework governing chapter 151C's administrative exhaustion requirement is, as this court has observed, "somewhat tangled." Bloomer v. Becker Coll., No. 09-cv-11342-FDS, 2010 WL 3221969 at *6 (D. Mass. Aug. 13, 2010). At the hearing on the motion to dismiss, Defendants informed the court that they no longer seek to pursue the exhaustion argument. Accordingly, Defendants' motion to dismiss this claim for failure to exhaust is considered withdrawn.

4

In light of the foregoing, no claims remain against Defendant Rizzi. The court turns now to the remaining claims against Defendants Miller and the Town.

　　B.　*Remaining Federal Claims*

　　　　1.　Title IX

To succeed on her Title IX claim against the Town, Plaintiff must show that she "was a student, who was subjected to harassment based upon sex . . . [that] was sufficiently severe and pervasive to create an abusive educational environment." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 66 (1st Cir. 2002). She must show, too, that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 288-90 (1989). Defendants contend that the complaint fails to allege either actual knowledge or deliberate indifference. See Def. Mem. 13.

"The actual knowledge requirement imposes a higher standard for Title IX claims than for claims arising under § 1983, where deliberate indifference can follow actual or constructive knowledge." Doe v. Bradshaw, 203 F. Supp. 3d 168, 185 (D. Mass. 2016) (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 903 (1st Cir. 1988)). Actual knowledge requires that the defendant is deliberately indifferent to "known acts" of harassment or discrimination. See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633, 643 (1999). Courts have thus found that notice of inappropriate conduct that did not constitute harassment or discrimination did not give rise to actual notice of sex discrimination or harassment. See Gebser, 524 U.S. at 279-80 (complaint from parents of other students charging inappropriate comments during class did not constitute actual knowledge sexual harassment or discrimination); Bradshaw, 203 F. Supp. 3d at 185

(rumors of purchasing alcohol for students "cannot give rise to actual knowledge for Title IX purposes").

The complaint in this case alleges that "a classmate of Ms. Doe informed his teacher of his observations of Norton providing Doe with special treatment. The student, along with the teacher, reported that they had observed Ms. Doe parking her vehicle at the nearby school and subsequently getting into Norton's vehicle." Compl. ¶ 21. Plaintiff argues that Miller had actual knowledge of Norton spending excessive time with Doe, giving her special treatment, and leaving school property with Doe in his vehicle. Opp'n 8 [#27]. In Plaintiff's view, "[s]uch conduct between an older male teacher and a minor female student objectively reveals the strong and presumptive likelihood of illegal sexual misconduct, abuse and harassment." Id. However, even interpreting the complaint as Plaintiff suggests, see Ruivo, 766 F.3d at 90, these allegations do not establish that Miller had *actual knowledge* of sexual harassment or discrimination, as required by Title IX.

Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claim against the Town is ALLOWED.

### 2. 42 U.S.C. § 1983

Defendants do not challenge Plaintiff's § 1983 claim against the Town on this motion to dismiss, but do seek dismissal of the § 1983 claim as to Miller.

A supervisor can be liable for a subordinate's actions under § 1983 "if the subordinate's behavior led to a constitutional violation and if 'the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" Salvidar, 818 F.3d at 18 (quoting Estate of Bennett v. Wainwright, 548 F.3d 155,

176-77 (1st Cir. 2008)). To demonstrate deliberate indifference under § 1983, the "supervisor must have 'actual or constructive knowledge' of a 'grave risk of harm' posed by the subordinate and fail to take 'easily available measures to address the risk.'" Id. (quoting Camilo–Robles v. Hoyos, 151 F.3d 1, 6–7 (1st Cir. 1998)).

As discussed above, Plaintiffs have not alleged facts sufficient to charge Miller with actual knowledge of the sexual harassment. She has alleged (albeit in a somewhat conclusory fashion), that from these facts, "Miller should have considered and did consider the information she received to be a credible basis for suspected sexual abuse." Compl. ¶ 21. Although a close call, in light of the allegations of the report to Miller of time spent by Norton and Doe outside of school without others present, that Doe was observed by one or more school employees on multiple occasions alone late at night in a back room with Norton, and that multiple teachers and administrators knew that Norton was providing Doe with passes to spend significant time in his class room, a reasonable jury could conclude that Miller was on constructive notice of a grave risk of harm posed by Norton to Doe.

Defendant further emphasizes that, in any case, after receiving this information Miller did address the risk by conducting an investigation and interviewing both Norton and Plaintiff, both of whom denied having an improper relationship. Def. Mem. 19 [#22].

Plaintiff responds that Miller displayed deliberate indifference because she pursued her investigation with "superficial effort, at best, to get at the truth." Opp'n 10 [#27].

The facts pled in the complaint, construed in the light most favorable to Doe, could give rise to an inference that, having constructive knowledge of a grave risk of harm, Miller failed to take sufficient, easily available measures to address the risk. Defendants' motion to dismiss the section 1983 claim against Miller is therefore DENIED.

C. *Remaining State law Claims*

   1. Massachusetts Civil Rights Act

Together, sections 11H and 11I of the MCRA provide a private right of action for "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with," M.G.L. ch. 12 § 11H, "by threats, intimidation or coercion," id. § 11I.

In the context of interfering with a person's rights under the MCRA, a threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League v. Blake, 417 Mass. 467, 474 (1994). "'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct," and coercion involves "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Id. (citations omitted). Defendants contend that Plaintiff's MCRA claim against Miller must be dismissed because the complaint contains no factual allegations that Miller threatened, intimidated, or coerced Plaintiff, and no factual allegations illustrating any violation of Doe's constitutional rights. Def. Mem. 16-18 [#22].

Plaintiff responds that the complaint sufficiently alleges that Miller's investigation involved intimidation and coercion because "the manner in which the so-called investigation was conducted by Miller put [Doe] in fear of telling the truth." Opp. at 10. But, on a motion to dismiss, the court must first distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). See Saldivar, 818 F.3d at 18. The complaint does allege that Miller "conducted the interview in a

hostile, intimidating, and coercive manner designed to obstruct the revelation of the truth." Compl. ¶ 24. Accepting that Plaintiff may have felt intimidated and scared when she was being questioned by the principal, she offers no factual allegations from which one could draw the inference that Miller questioned her in an intimidating manner "to obstruct the revelation of the truth."

Instead, the Complaint alleges only that Miller questioned Doe, a minor, without notifying her parent or guardian, that Miller "did not ask Ms. Doe to retrieve her cell phone and never did anything to review the cell phone's content" despite "having credible information that the cell phone was involved in communications between Norton and Ms. Doe," and that Miller "did not ask Ms. Doe if she had been threatened in anyway by Norton" or "assure Ms. Doe that she would not be in trouble with the Town if she revealed she was a victim of sexual abuse." Compl. ¶¶ 22, 24. At most, these allegations suggest that alternative ways to conduct the interview may have elicited more information. They do not support the claim that Miller engaged in "threats, intimidation or coercion" for the purpose of interfering with Doe's civil rights.

In the absence of such factual allegations, Defendants' motion to dismiss the MCRA claim against Miller is ALLOWED.

### 2. Massachusetts Torts Claims Act

The Massachusetts Torts Claims Act ("MTCA"), M.G.L. ch. 258, provides for liability of public employers for injuries caused by the negligent acts or omissions of public employees while acting within the scope of official employment. Plaintiff claims that the Town is liable for the negligent acts of employees other than Norton. See Opp'n 2 [#27] (clarifying that Plaintiff does not seek to establish MTCA liability based on Norton's negligent or intentional acts).

9

Section 10(j) of the MTCA protects a municipality from liability "based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." M.G.L. ch. 258, § 10(j). The provision establishes "a distinction between the failure to alleviate or respond to a private harm," which is not actionable, "and the action of a public employee in initially creating the injury-causing circumstance," which is actionable. See Armstrong v. Lamy, 938 F. Supp. 1018, 1044 (D. Mass. 1996). Claims for negligent supervision have therefore been held to be barred by section 10(j) because they are omissions rather than affirmative acts. Pettengill v. Curtis, 584 F. Supp. 2d 348, 366 (D. Mass. 2008) (citing Armstrong, 938 F. Supp. at 1043-46). A claim that municipal employees "failed to 'train,' 'supervise,' 'regulate,' 'control,' or 'correct'" Norton would be likely be considered a "failure to alleviate or respond to a private harm" subject to dismissal. See Armstrong, 938 F. Supp. at 1043-46; but see LaPierre v. City of Lawrence, No. 11-cv-12039-RWZ, 2013 WL 1829120 at *2-5 (D. Mass. May 1, 2013) (holding that section 10(j) bars liability for negligent supervision only where the negligent supervision was attributable to a private third party, not to a public employee).

However, if a municipal employee negligently hired a perpetrator, the municipality "may have 'originally caused' the situation and, therefore, it would not be immune from suit pursuant to section 10(j)." Pettengill, 584 F. Supp. 2d at 367. Similarly, "if negligent promotion . . . created a new risk by giving [the perpetrator] more autonomy, that too would make [the municipality] the 'original cause' of [the plaintiff's] injuries." Id. Moreover, 10(j) immunity "shall not apply to . . . any claim based upon the intervention of a public employee which causes

10

injury to the victim or places the victim in a worse position than he was in before the intervention." Mass. Gen. Laws. ch. 258 § 10(j)(2).

Defendants contend that, to the extent that Plaintiff's MTCA claim is based on alleged negligent training and supervision, the claim must be dismissed because there is no actionable underlying tortious conduct. See Def. Mem. 5-9 [#22]. Massachusetts allows "supervisory negligence claims against municipalities where the municipality knew or should have known about an underlying, identifiable tort which was committed by named or unnamed public employees." Def. Mem. 7 [#22] (quoting Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010)). Defendants contend that "neither Miller nor Rizzi committed a tortious act against Plaintiff," noting that the Massachusetts mandated reporter law, Mass. Gen. Laws ch. 119 § 51A, does not contain a private right of action. Def. Mem. 8 [#22].

However, even where a statute does not provide for a private right of action, where "the interest protected is physical or emotional harm, courts may consider the legislative purpose and the values reflected in the statute to decide that the purpose and values justify adopting a duty that the common law had not previously recognized." Restatement (Third) of Torts ch. 7 § 38(c). As such, to the extent that Town employees violated the mandatory reporting laws or other school safety statutes, those violations may establish liability under the MTCA.

Moreover, Plaintiff's complaint, identifies a number of affirmative acts aside from negligent hiring, training, and supervision, which may have caused injury or placed Plaintiff in a worse position. For example, Plaintiff points to "[t]he establishment of a system which allowed Norton to remove Ms. Doe from the classes she should have been attending," "[t]he provision of afterhours facilities with a secluded room to Norton which facilitated his abuse of Ms. Doe," and

11

the conduct of an inadequate investigation into credible allegations of Norton's misconduct. Opp'n 4-5 [#27].

The court need go no further, as such allegations are sufficient, at this stage, to state a claim under the MTCA. Defendant's motion to dismiss Count I is therefore DENIED.

IV.  Conclusion

In light of the foregoing, Defendants' Partial Motion to Dismiss the First Amended Complaint [#21] is ALLOWED in part and DENIED in part. Count I (against the Town under M.G.L. c. 258) shall proceed in its entirety. All claims in Count II are dismissed, except for Plaintiff's claims against the Town under M.G.L. 151c, and section 1983. All claims in Count III are dismissed except for Plaintiff's section 1983 claim against Miller. Count IV is dismissed in its entirety.

IT IS SO ORDERED.

Date: April 25, 2018                                /s/ Indira Talwani
                                                    United States District Judge