UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, | |
|     Plaintiff, | |
| v. | Civil Action No. 1:17-cv-12337-IT |
| TOWN OF STOUGHTON, JULIETTE MILLER, and MARGUERITE RIZZI, | |
|     Defendants. | |

MEMORANDUM & ORDER

July 31, 2020

TALWANI, D.J.

After a teacher employed by the Town of Stoughton (the "Town") allegedly sexually abused Plaintiff for several years while she was a high school student, Plaintiff, proceeding here as Jane Doe, sued the Town and two school administrators. The court dismissed portions of the complaint on Defendants' motion to dismiss. Defendants Town and Juliette Miller now seek judgment on Plaintiff's remaining claims. For the following reasons, the Motion for Summary Judgment [#66] is GRANTED in part and DENIED in part.

I.    Factual Background

The facts are taken from the summary judgment record and are undisputed for purposes of this motion unless otherwise noted.

During the relevant period, Jane Doe was a student at Stoughton High School and Juliette Miller served as principal. Pl's Resp. to Defs' Rule 56.1 Statement of Material Facts ("Pl's SOF Resp.") ¶ 1 [#72]; Pl's Ex. Q – Doe Dep. 20:19-21:1 [#71-4].

Doe met science teacher Timothy Norton in the fall of 2013, during her sophomore year, when she joined Destination Imagination, an extracurricular program Norton supervised. Pl's Ex.

Q – Doe Dep. 21:13-19 [#71-4]. Norton ran the program out of his classroom, which included a backroom that was used for storage. Id. 30:7-23.

In the fall of Doe's junior year, Norton began texting Doe individually. Id. 42:23-44:15. He also visited Doe at her house and they began having meals together before and after school and on weekends. Id. 43:19-23; 44:14-45:6; 46:13-46:24; 48:14-49:7; 49:24-55:6. At school, Norton provided Doe a key to a drawer in his classroom where she could keep personal items. Id. 35:24-38:1.[1]

Doe and Norton began a sexual relationship in late 2014 or early 2015 of her junior year, when Doe was sixteen years old. Defs' Ex. J – Police Report 5 [#70-10] (Doe reported to the police that she thought the sexual relationship started in December 2014 or January 2015); Pl's Ex. Q – Doe Dep. 55:22-56:1 [#71-4] (stating that they first kissed in November 2014); id. 70:6-72:5 (stating that they first had sexual intercourse in February 2015). Most of the sexual encounters happened at Norton's house, but some occurred in the backroom of Norton's classroom. Pl's Ex. Q – Doe Dep. 72:20-74:4 [#71-4]. Norton told Doe that he would kill himself if anyone found out about their relationship, id. 71:3-6; 88:4-12, and Doe did not tell her family, friends, or other school staff about her relationship with Norton. Pl's SOF Resp. ¶ 1 [#72].

At the beginning of her senior year in 2015, Doe suffered a concussion while playing field hockey. Pl's Ex. Q – Doe Dep. 39:6-11 [#71-4]. As a result, she would sometimes request permission from teachers to leave their classes and would rest in the back of Norton's classroom. Id. 39:6-24; 40:21-42:17.

On September 30, 2015, a student asked to speak privately with teacher Courtney Sasin. Defs' Ex. C – Sasin Report [#70-3]. The student confided that there was an "inappropriate

---

[1] Doe states her Destination Imagination teammates knew about her drawer. Id. 36:13-38:8.

relationship" between Norton and Doe. Id. Sasin thought about the matter overnight and discussed it with the student again in the morning. Id. Sasin also discussed the student's statements with Ms. Buoniconti, the head of Norton's science department, who told Sasin to file a report, and with Assistant Principal Michael O'Neil, who remembers that Sasin was visibly upset and that she felt she had a professional responsibility to report the accusations. Id.; Pl's Ex. P – Miller Dep. 116:17-21 [#71-3]; Pl's Ex. N – O'Neil Dep. 68:12 – 69:2 [#71-1]. Sasin filed an Incident Report relating the student's report of the "inappropriate relationship" and stating that she "couldn't ignore [the student's] confidence that it wasn't just favoritism." Defs' Ex. C – Sasin Report [#70-3].

The student, who was one of Doe's Destination Imagination teammates, see Pl's Ex. Q – Doe Dep. 37:23-38:1 [#71-4], also filled out an Incident Report. Defs' Ex. B – Student Report [#70-2]. His report listed: "extreme favoritism toward student from teacher"; potentially texting and snapchatting; allowing the student to sleep in his classroom; had student's baby pictures behind his classroom desk; and "allegations of meeting up" with Doe during the summer at Gibbons Elementary School. Id.; Pl's SOF Resp. ¶ 4 [#72]. The student reported that he had discussed Norton and Doe's relationship with three other students, who he identified. Defs' Ex. B – Student Report [#70-2] (names of students redacted). The report stated further, "inclination of inappropriate relationship but 'tangible evidence' is lacking." Id.

O'Neil brought the reports to Principal Miller. Pl's Ex. P – Miller Dep. 94:16-95:8 [#71-3].[2] Miller then asked for Doe to come to her office. Id. 96:4-24. O'Neil found Doe in the yearbook office where she was alone with Norton and asked her to come to Miller's office. Pl's

---

[2] Miller contends that O'Neil told her that he had interviewed the student who filed the report, but O'Neil does not recall speaking with the student. Compare Pl's Ex. P – Miller Dep. 95:9-96:2 [#71-3] with Pl's Ex. N – O'Neil Dep. 45:18-46:4 [#71-1].

Ex. Q – Doe Dep. 81:13-82:12 [#71-4]. As Doe left for Miller's office, Norton whispered to her to leave her phone behind. Id. 81:5-82:4.

In the meeting with Miller, Doe concealed the details of her relationship with Norton, falsely stating that, apart from Destination Imagination activities, she did not exchange text messages with Norton and never met with Norton outside of school. Id. 86:9-87:17; Defs' Ex. L – Miller Aff. ¶¶ 4-5 [#70-12]. Doe didn't answer Miller's questions truthfully because she was terrified she would be responsible for Norton killing himself and because the "way the questions were posed kind of made it seem like it was my fault and that if I were to say that something happened that I would be in trouble for my answers." Pl's Ex. Q – Doe Dep. 87:22-88:24 [#71]. Miller asked Doe to see her cellphone, but Doe told her that it was "downstairs." Defs' Ex. L – Miller Aff. ¶ 7 [#70-12]; Pl's Ex. Q – Doe Dep. 91:3-8 [#71-4] (stating she told Miller it was "downstairs.").[3] Miller found Doe credible and did not follow up to look at Doe's phone after the interview. Defs' Ex. L – Miller Aff. ¶¶ 4, 7 [#70-12]; Defs' Ex. G – Miller Admis. ¶ 24 [#70-7]; Pl's Ex. P – Miller Dep. 105:12-14 [#71-3].

After the interview, Doe was allowed to return to Norton's classroom by herself and had a brief conversation with Norton. Pl's Ex. Q – Doe Dep. 90:21-24; 92:14-93:19 [#71-4]. Miller called Norton on the classroom phone and asked him to come to her office. Pl's Ex. P – Miller Dep 119:6-13 [#71-3]. Miller questioned Norton about the allegations, which Norton denied, and Miller found his answers credible as well. Pl's SOF Resp. ¶ 5 [#72]; Defs' Ex. L – Miller Aff. ¶ 9 [#70-12]. Miller did not ask to look at Norton's phone even though she had asked teachers to voluntarily allow their phones to be searched in other situations. Defs' Ex. L – Miller Aff. ¶ 10 [#70-12]; Defs' Ex. D – Miller Dep. 82:1-5 [#70-4].

---

[3] Miller contends that Doe told her she did not carry her cell phone with her at school. Pl's Ex. P – Miller Dep. 105:5-11 [#71-3].

Miller cautioned Norton against exhibiting signs of favoritism, texting students individually, and being alone with female students. Pl's SOF Resp. ¶ 7 [#72]. Norton was not disciplined, id, and Miller did not follow up to check if Norton complied with her suggestions. Pl's Ex. P – Miller Dep. 124:15-125:5 [#71-3].

Later that day, Miller confirmed with the school nurse that Doe received accommodations to be excused from certain classes and activities due to her concussion. Pl's SOF Resp. ¶ 6 [#72]; Pl's Ex. P – Miller Dep. 124:10:14 [#71-3]. Miller also looked through Norton's school email account and did not find communications with Doe. Defs' Ex. L – Miller Aff. ¶ 10 [#70-12]. She called and left a message for Doe's father, but did not receive a response. Id. ¶ 12. Miller also notified the school administration about the allegations against Norton. Id. ¶ 15. No further investigation was conducted. Pl's Ex. P – Miller Dep. 124:7-9 [#71-3].

Norton and Doe discussed the interviews the next day and Norton told Doe to delete his contact from her phone and to use a secure texting application. Pl's Ex. Q – Doe Dep. 94:15-96:20; 156:11-157:23 [#71-4]. Doe remained a member of Destination Imagination and Norton continued as the faculty advisor. Id. 76:15-16; 101:8-18. The sexual relationship between Norton and Doe continued through Doe's senior year and after her graduation in 2016. Id. 115:15-116:6.

Doe and Norton's relationship ended on or around September 12, 2017, during Doe's sophomore year of college. Id. 140:8-11; Defs' Ex. J – Police Report 6 [#70-10]. Around that time, Doe told Stoughton teacher Kathy Bulger about the relationship and Bulger notified Defendants on or about September 18, 2017. Pl's SOF Resp. ¶ 2 [#72]; Defs' Ex. J – Police Report 3 [#70-10]. Upon learning the information, Defendants placed Norton on administrative leave and the school investigated his conduct. Pl's SOF Resp. ¶ 8 [#72]. After the investigation, Miller informed Norton that the school intended to terminate his employment and Norton instead resigned. Id.

5

II.     Procedural History

Plaintiff initially brought claims against the Town, Miller, and Superintendent Marguerite Rizzi in Superior Court. Compl. [#1-1]. Defendants removed the action, see Notice of Removal [#1], and filed a Partial Motion to Dismiss the First Amended Complaint [#21], which the court granted in part and denied in part. Mem. & Order [#36]. Four claims remain before the court: 1) a Massachusetts Tort Claims Act claim against the Town; 2) a claim of sexual harassment in violation of M. G. L. c. 151C against the Town; 3) a § 1983 claim against the Town; and 4) a § 1983 claim against Miller. Defendants seek summary judgment on all remaining counts.

III.    Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-moving party and resolves any disputes of material fact in their favor. Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). "A dispute is 'genuine' if 'a reasonable jury could resolve the point in favor of the nonmoving party.'" Staples v. Gerry, 923 F.3d 7, 12-13 (1st Cir. 2019) (quoting in part Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)). A "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted). If further inquiry into the facts is necessary to apply the relevant law, summary judgment is not appropriate. Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006). The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

IV.    Analysis

    A.  Massachusetts Torts Claims Act Claim

The Massachusetts Torts Claims Act ("MTCA") allows for claims against public employers for injuries "caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." M. G. L. c. 258, § 2. As with all negligence claims, a plaintiff "must establish that the defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injury to the plaintiff." Doe v. Bradshaw, 203 F. Supp. 3d 168, 187 (D. Mass. 2016) (quoting Petrell v. Shaw, 453 Mass. 377, 385 (2009)).

Defendants argue that Doe's claim is barred by section 10(j) of the MTCA, which precludes claims "based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." M. G. L. c. 258, § 10(j). Defendants view Doe's claim as alleging a nonactionable "failure to act" and they contend that Plaintiff has failed to present "evidence . . . that the Town originally caused Norton to sexually harass Plaintiff." Defs' Mem. in Support of Mot. for Summ. J. ("Defs' Mem.") 11 [#67].

Plaintiff responds that § 10(j) does not apply to her negligence claim against the Town because public employees other than Norton committed affirmative acts which "original[ly] cause[d]" Doe's injury-causing circumstance. Pl's Opp'n to Mot. for Summ. J. ("Pl's Opp'n") 14-15 [#71]. Plaintiff also points to § 10(j)'s "saving provision" – § 10(j)(2) – which makes actionable "any claim based upon the intervention of a public employee which causes injury to the victim or places the victim in a worse position than he was in before the intervention." Id. at 15; M. G. L. c. 258, § 10(j)(2).

Under § 10(j), "the claim must involve 'something more than the pure failure to alleviate a private harm' and that to be successful a claimant must show 'some involvement of a public employee in creating the injury-causing scenario, not simply a failure to respond adequately after it arises.'" Armstrong v. Lamy, 938 F. Supp. 1018, 1043 (D. Mass. 1996) (quoting Joseph W. Glannon, Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule, 79 Mass. L. Rev. 17, 26 (1994)) (emphasis in the original). Courts further require plaintiffs to establish that the negligent act "materially contributed to creating the specific 'condition or situation' that resulted in the harm.'" Stahr v. Lincoln Sudbury Reg. High Sch. Dist., 93 Mass. App. Ct. 243, 247 (2018) (quoting Cormier v. Lynn, 479 Mass. 35, 40 (2018)). Accordingly, as this court previously noted, courts have generally barred claims based on acts that amount to the failure to train or supervise public employees. Mem. and Order 10 [#36] (citing Armstrong, 938 F. Supp. at 1043-1046); see also Brum v. Town of Dartmouth, 428 Mass. 684, 692-93 (1999) (explaining that "neglect of duty" is not actionable under MTCA). But see LaPierre v. City of Lawrence, 2013 WL 1928120, at *2-5 (D. Mass. May 1, 2013) (finding the failure to supervise and train can be an affirmative act).

Plaintiff has proffered no evidence of affirmative negligent acts by Town employees prior to October 1, 2015. However, Plaintiff has provided evidence that, when viewed in the light most favorable to her, would allow a jury to find that the affirmative act of retaining Norton as Doe's teacher and faculty advisor to Destination Imagination after receiving the October 1, 2015 reports of a possible inappropriate relationship, coupled with an inadequate investigation of those reports, "originally caused" Doe's injury during her senior year. The act of hiring, retaining, or promoting a public employee can be an original cause of harm under MTCA if that action placed the person in a position to harm the plaintiff. See Doe v. Fournier, 851 F. Supp. 2d 207, 225 (D. Mass. 2012) (stating that while "retention is more passive than hiring," a fact finder could

8

conclude that the school's retention of a teacher after learning of improper relations with students was an original cause of the injury-causing circumstance); Pettengill v. Curtis, 584 F. Supp. 2d 348, 367 (D. Mass. 2008) (finding that negligent promotion can be the "original cause" of a plaintiff's injury-causing situation); see also Bonnie W. v. Commonwealth, 419 Mass. 122, 125 (1994) (holding that recommending the hiring of convicted rapist potentially "originally caused" the circumstance that gave employee access to victim).[4] Here, a jury could reasonably find that, having never interviewed either the student or the teacher who filed reports about a possible inappropriate relationship between Norton and Doe, Defendants nonetheless kept Norton in positions of authority that gave him continued access to Doe after hours and without supervision, facilitating his sexual relationship with Doe during her senior year.

The court takes guidance from cases involving negligent hiring claims under the MTCA. In such cases, a plaintiff must present evidence that the public employer 1) failed to exercise due care in the selection of an employee, 2) knew or should have known that the employee who was hired was unfit and posed a danger to others who would come into contact with the employee during the employment, and 3) that the employer's failure proximately caused the injury of which the plaintiff complains. Armstrong, 938 F. Supp at 1046. In Doe v. Bradshaw, for example, the court declined to grant summary judgment based on evidence that school officials had received reports of inappropriate conduct by a coach with students prior to its decision to

---

[4] In Doe v. Old Rochester Reg. Sch. Dist., 56 F. Supp. 2d 114, 121 (D. Mass. 1999), cited by Defendants, the student was allegedly subjected to sexual assault by a teacher from June 1994 through August 1996, and school officials knew of the teacher's assault of another student in October 1995. Nonetheless, the court dismissed the first student's MTCA claim where "the complaint does not allege that the School District was negligent in hiring [the teacher] or that it knew at the time of hire that he had a prior criminal record." Id. The decision is unremarkable to the extent that the plaintiff sought recovery under the MTCA for harm that occurred prior to the School District's knowledge of the assault of the second student. The court disagrees with the decision as to injuries that occurred after the School District was on notice of the assault of the second student and took no steps to prevent further sexual assaults.

hire him. 203 F. Supp. 3d at 187. In denying the motion, the court held a reasonable jury could find the hiring decision, in the face of such knowledge, was the original cause of the coach's ability to abuse the plaintiff, a student. Id. While the court also stated that a reasonable jury could alternatively find the town had discharged its duty to the plaintiff by clearing the coach in an internal investigation prior to hiring, the factual questions were properly left to a jury. Id.

Here, Plaintiff has provided sufficient evidence that a jury could find Defendants knew or should have known of an inappropriate relationship between Norton and Doe as of October 1, 2015, based on the reports they received. A jury could also find that Defendants failed to exercise due care by retaining Norton as a teacher and as faculty advisor for Destination Imagination, and therefore allowed Norton continued access to Doe, despite the reports about his conduct with Doe, and that Norton's retention and access to Doe during her senior year proximately caused her additional injury. Since these questions rest on the weighing of evidence and considerations of credibility, summary judgment based on § 10(j) is not warranted.

In addition, Plaintiff has presented evidence (through her own testimony) that Miller's investigation on October 1, 2015, left Doe with the impression that Defendants were only interested in protecting Norton, thereby placing Doe in a worse position than she was in before the investigation. Pl's Opp'n 15-16 [#71]. In their motion, Defendants do not address § 10(j)(2) or Plaintiff's assertion. Yet Plaintiff's argument is sufficient on its own to deny summary judgment as the evidence, viewed in the light most favorable to Doe, Miller's investigation made Doe fearful about revealing the truth about her relationship. Pl's Ex. Q – Doe Dep. 88:4-90:15 [#71-4] ("The way the questions were posed kind of made it seem like it was my fault and that if I were to say that something happened that I would be in trouble for my answers. . . [the questions] were just kind of one after the other, kind of like trying to check a box and move

on."). A reasonable jury could find that Miller's acts during the one-day investigation placed Doe in a worse position than if Miller had not intervened at all.

Accordingly, as the evidentiary record could support a finding that Defendants' affirmative acts caused Doe's injury-causing situation after October 1, 2015, or alternatively, could find that the investigation left Doe in a worse situation than prior to the intervention, Plaintiff's MTCA claim may continue.

### B. § 1983 Claims against the Town and Miller[5]

#### i. § 1983 claim against the Town (Count II)

Defendants seek summary judgment on the § 1983 claim brought against the Town, arguing there is no evidence as to a "policy or practice" that caused the constitutional injury. Defs' Mem. 19-22 [#67] (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694-95 (1978)).

Plaintiff does not offer any opposition or argument as to Defendants' motion for summary judgment on the municipal § 1983 claim. Failure to put forth any argument in opposition to a motion for summary judgment on an issue is sufficient to deem that part of the claim abandoned. Montany v. Univ. of New Eng., 858 F.3d 34, 41 (1st Cir. 2017); see also Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("an issue raised in the complaint but ignored at summary judgment may be deemed waived.").

Even assuming Plaintiff has not abandoned her argument on this claim, summary judgment is nonetheless warranted as the record does not contain sufficient evidence for a jury to find the requisite policy or procedure that caused Doe's constitutional injury.

---

[5] Defendants assert that Miller was sued in her "official capacity," and that the claim should be treated as a single claim against the Town. Defs' Mem. 9 [#67] (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). As Plaintiff is not seeking injunctive relief, the court agrees that a suit against Miller in her official capacity is a suit against the Town. But Plaintiff has not limited her claim to Miller's official capacity, and accordingly, the court considers the § 1983 claim both as against the Town and as against Miller in her individual capacity.

In order to establish municipal liability for a public employee's violation of a plaintiff's constitutional rights, there must be evidence of a municipal custom or policy that caused the constitutional injury. Monell, 436 U.S. at 695. Specific acts by a town employee can only constitute a "custom or policy" if the person is vested with "final policymaking authority," and determining whether an official has such authority is a matter of state law. Bradshaw, 203 F. Supp. 3d at 182 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483, n.12 (1986)). In Massachusetts, the School Committee has final policymaking authority over educational policies. Id. (citing Armstrong, 938 F. Supp. at 1035).

Here, the alleged unconstitutional acts were committed by a school official, not the school committee. Further, there is no evidence that the school committee put in place a municipal custom or policy that caused Plaintiff's injury. While Doe submitted a copy of the committee's policy on maintaining professional boundaries, Pl's Ex. Y – School Committee Policy on Maintaining Boundaries [#71-12], there is no evidence that there is a causal link between this policy and Plaintiff's injury. Nor does Plaintiff's expert's report illuminate the policy or procedure that the school committee allegedly had in place that led to Doe's harm, despite pointing out allegedly better procedures Miller and other officials could have taken to prevent Doe's injury. See Pl's Ex. W – Fineran Report 12-23 [#71-10]. And there is no evidence that the final decisionmakers knew or should have known of Doe's ongoing harm and failed to act. See Bradshaw, 203 F. Supp. 3d at 183-184 (finding no liability as the school committee, upon hearing reports of abuse, immediately turned over the reports to the superintendent).

As such, because Plaintiff failed to respond to Defendants' motion for summary judgment on this claim and because there is insufficient evidence for a jury to find municipal liability, summary judgment is warranted as to Plaintiff's §1983 claim against the Town.

      ii.  § 1983 Claim against Miller (Count III)

Plaintiff also brings a § 1983 claim against Miller, asserting she is liable as a supervisor for Norton's violation of Doe's constitutional rights. Defendants seek summary judgment, contending that Miller did not act with deliberate indifference or, alternatively, that Miller is entitled to qualified immunity.

The constitutional right to "bodily integrity" is violated when a state actor "sexually abuses a school child." Fournier, 851 F. Supp. 2d at 219 (D. Mass. 2012) (quoting Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 451-52 (5th Cir. 1994)). To establish supervisory liability under § 1983 for such a violation, a plaintiff must show 1) subordinate liability for the constitutional violation, and that 2) "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (alterations in the original) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)). A plaintiff must show the supervisor had "actual or constructive knowledge" of a "grave risk of harm" and that the supervisor nonetheless failed to take "easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F. 3d 1, 7 (1st Cir. 1998); see also Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014) (stating that a plaintiff must show that "officials had knowledge of facts" from which they could "draw the inference" of "a substantial risk of serious harm"). Deliberate indifference is a narrow standard and will only be found "if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Pineda 533 F.3d at 54.

There is no dispute that Norton, Miller's subordinate, violated Doe's constitutional rights. Plaintiff asserts further that Miller acted with deliberate indifference as shown by her a) failure to conduct a thorough investigation of reports of Norton's relationship with Doe; and b) failure, as a

13

mandatory reporter, to notify the police or otherwise report the allegations. See Pl's Opp'n 19 [#71].

Miller received two reports about a possible inappropriate relationship between Norton and Doe and arguably performed a deficient investigation, where Miller did not interview the student who made a report, the teacher who felt compelled to file a separate report based on the student's oral report to her, or the head of Norton's science department who, after hearing the teacher's concerns, told her to file a report. Miller also failed to take a number of other steps that might have revealed evidence of Norton and Doe's sexual relationship, such as interviewing the three students listed in one of the reports who may have had additional information about Norton and Doe's relationship, requiring Doe to present her phone for inspection or asking Norton to inspect his phone. Finally, Miller failed to take steps that may have prevented further harm, such as making sure that Doe's father received her message and alerting him of the allegations. Based on these deficiencies, as discussed above, a jury could find Miller negligent.

Plaintiff argues that these alleged failings also constitute deliberate indifference and point to the Bradshaw court's denial of summary judgment of a similar § 1983 claim brought, in the relevant part, against the school's superintendent. 203 F. Supp. 3d at 179-180. In that case, where a high school paraprofessional and soccer coach assaulted a student months after the superintendent had received at least one report that the coach was "dating a student," the question of § 1983 supervisory liability for the superintendent depended on "what she knew when" and on the "reliability of the past reports." Id. at 178-179. The court considered whether the superintendent's investigation, which consisted of a short conversation by a subordinate with the coach and the subordinate's mistaken determination of the coach's credibility, could amount to actionable deliberate indifference. Id. at 179. The court concluded that such a "perfunctory investigation" might establish deliberate indifference if "either [the superintendent] had already

14

heard reports of misbehavior by [the coach] or if she otherwise believed the [report she undisputedly received] to be credible." Id. Finding those questions unanswered in the record, which included evidence from which a jury could find the superintendent had received other reports prior to the plaintiff's assault, the Bradshaw court concluded that a jury could determine the defendant was on notice of a risk of serious harm to students and that the superintendent's failure to take additional action constituted deliberate indifference. Id. at 179-180. The court also noted that "Massachusetts law cabins a school official's discretion to ignore even rumors. As a school official, [defendant] was a mandated reporter under state law . . . and affirmatively obligated to report to the Department of Children and Families if she had 'reasonable cause to believe' that a child was being abused." Id. at 179 (quoting in part M. G. L. c. 119, § 51A)).

      Here, there is no factual dispute that the reports Miller received were ambiguous about Norton's relationship with Doe and that Miller did not otherwise receive any other information that should have given her reasonable cause to believe that Norton was engaged in a sexual relationship with Doe or otherwise posed a danger to students. See Armstrong, 938 F. Supp. at 1033-35 (surveying tests from Third, Fifth, Eighth, and Tenth Circuits in cases of sexual abuse by subordinate school employee and noting that cases where summary judgment was denied occurred where supervisory officials received "a clear signal" of inappropriate sexual behavior or received a pattern of reports and nonetheless failed to act or, in some instances, actively covered up allegations) (citing Larson by Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir. 1996) (requiring knowledge of a "pattern of unconstitutional behavior" by subordinate); Taylor Indep. Sch. Dist., 15 F.3d at 451, 456-57; Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cty., Kan., 996 F.2d 1035, 1041 (10th Cir. 1993) (requiring showing that individual supervisor "received notice of a pattern of violations"); and Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 731 (3d Cir.

1989) (requiring "affirmative acts" by supervisor allowing for a "claim of toleration, condonation or encouragement of sexual harassment")).

In addition, Miller conducted a substantive investigation after receiving the reports, interviewing Doe and Norton separately, looking through Norton's school email, discussing Doe's accommodations with the school nurse, and attempting to reach Doe's father. Pl's SOF Resp. ¶¶ 5-6 [#72]; Def's Ex. L – Miller Aff. ¶¶ 4, 9, 10, 12 [#70-12]; Pl's Ex. P – Miller Dep. 124:7-125:5 [#71-3]. Though a jury could find Miller's investigation flawed, and though Miller's conduct arguably made Doe's situation worse, Miller's investigation cannot be categorized as so perfunctory, despite knowledge of a risk of abuse to Doe or other students, to amount to deliberate indifference.

Thus, even when taking all inferences for the non-movant, the record cannot sustain a finding that Miller acted with deliberate indifference. Without more evidence that Miller was on notice of the danger to Doe or other students, or had reasonable cause to believe that Doe was being abused and therefore was required to file a report with the state pursuant to M. G. L. c. 119, § 51A, summary judgment on the § 1983 claim against Miller is warranted.

    C.  Sexual Harassment Claim

Last, Defendants seek summary judgment on Plaintiff's sexual harassment claim arguing that Plaintiff failed to exhaust administrative remedies by filing a petition with the Massachusetts Commission against Discrimination (MCAD). Defs' Mem. 15-17 [#67].[6]

---

[6] Defendants raised this legal argument in their Partial Motion to Dismiss [#21], only to withdraw the argument without explanation at the hearing. Mem. in Support of Partial Mot. to Dismiss 10-11 [#22]; Mem. & Order 4 [#36]. As Defendants reasserted the argument as an affirmative defense in their later-filed Second Amended Answer 6 ¶ 9 [#37], the court addresses the argument now.

Under the Massachusetts Fair Educational Practices Act, M. G. L. c. 151C, § 2(g), it is an unlawful educational practice for an education institution to "sexually harass students in any program or course of study in any educational institution." The chapter defines sexual harassment as "sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature" when "such advances, requests, or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment." M. G. L. c. 151C, § 1(e).

A person "seeking admission as a student to any educational institution, or enrolled as a student in a vocational training institution, who claims to be aggrieved by an alleged unfair educational practice," may file a petition with the MCAD, and may thereafter obtain judicial review or enforcement of the MCAD's final order. M. G. L. c. 151C, §§ 3(a), 4; Morrison v. N. Essex Cmty. Coll., 56 Mass. App. Ct. 784, 786 n.6 (2002). Doe was neither a person seeking admission to Stoughton High School nor a student in a vocational training institution at the time of the events at issue here.

Chapter 214, § 1C, however, provides that a person "shall have the right to be free from sexual harassment, as defined in . . . [Chapter 151C]," and that "[t]he superior court shall have the jurisdiction to enforce this right and to award the damages and other relief . . . ." Chapter 214 thus "expands who is protected by ch. 151C and the remedies available to them, while ch. 151C remains the source of the substantive law." Bradshaw, 203 F. Supp. 3d at 188-89 (citing Lowery v. Klemm, 446 Mass. 572, 577-78 (2006)); see also Doe v. Town of Stoughton, 2013 WL 6498959, at *4 (D. Mass. Dec. 10, 2013) ("Chapter 214 thereby allows academic students who fall outside the two narrow categories described in [Chapter 151C, § 3(a)] to nevertheless take advantages of the protections offered by the Fair Educational Practices Act").

Defendants argue that all students filing suit pursuant to Chapter 214, alleging a violation of the right to be free of sexual harassment as defined in Chapter 151C, must first exhaust their administrative remedies with the MCAD. Defs' Mem. 15-16 [#67]. Chapter 214 does require a timely claim filed with the MCAD under M. G. L. c. 151B, but only where the Chapter 214 claim "is also actionable under chapter 151B or chapter 151C." M. G. L. c. 214, § 1C (emphasis added). Here, the claim is not also actionable under Chapter 151B or Chapter 151C where Doe is neither a vocational student or seeking admission into a school. Plaintiff's Chapter 214 claim was thus properly filed in state court, without first filing a claim which the MCAD was without jurisdiction to address. Morrison, 56 Mass. App. Ct. at 786 n.6; Fournier, 851 F. Supp. 2d at 216; cf. Mass. Comm'n Against Discrimination v. City of Revere, 2014 WL 5499573, at *5 (MCAD Oct. 22, 2014) (concluding that, after "construing the statutory language distinguishing procedural rights from substantive remedies under Chapter 151C, we reluctantly conclude that the MCAD lacks subject matter jurisdiction in matters concerning sexual harassment against a student which occurs in a non-vocational educational institution, unless the harassment is attendant to the admissions process.").

Here, as it is undisputed that Doe is neither a vocational student nor an individual seeking admission to school, her claim may proceed, pursuant to M. G. L. c. 214, § 1C, without filing a claim with the MCAD.[7]

---

[7] Insofar as Defendants seek summary judgment on the ground that Plaintiff failed to properly cite Chapter 214 in her complaint, the court finds that Defendants have long had notice of her claim. See Defs' Mem. in Support of Mot. to Dismiss 11 n.2 [#22] (citing and quoting from M. G. L. c. 214, § 1C). To the extent Defendants contend that Plaintiff's complaint does not give sufficient notice under Fed. R. Civ. P. 8 of the Chapter 214 claim, the court is prepared to grant a motion to amend the complaint to allow Plaintiff to explicitly cite Chapter 214.

V.     Conclusion

Accordingly, Defendants' Motion for Summary Judgment [#66] is GRANTED in part as to Plaintiff's § 1983 claims against the Town and Miller and DENIED as to Plaintiff's state law claims against the Town.

IT IS SO ORDERED.

Date: July 31, 2020                                             /s/ Indira Talwani
                                                                United States District Judge